# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

LAURI HOWE,

        Plaintiff,

   v.

ROBERT C. LITWACK, et al.,

        Defendants.

Civil No. 12-4480 (NLH/KMW)

**OPINION**

**APPEARANCES:**

Edward T. Kang, Esquire
Jacklyn Fetbroyt, Esquire
Kang Haggerty & Fetbroyt LLC
123 S. Broad Street
Suite 1220
Philadelphia, Pennsylvania 19109
    *Attorneys for Plaintiff Lauri Howe*

Louis A. Modugno, Esquire
William A. Cambria, Esquire
McElroy, Deutsch, Mulvaney & Carpenter, LLP
1300 Mt. Kemble Avenue
PO Box 2075
Morristown, New Jersey 07962-2075
    *Attorney for Defendants Robert C. Litwack and Litwack &*
    *Kernan, LLC*

William C. Mead, Jr., Esquire
William K. Pelosi, Esquire
Litchfield Cavo LLP
1800 Chapel Avenue West
Suite 360
Cherry Hill, New Jersey 08002
    *Attorney for Defendant Gruccio, Pepper, DeSanto, & Ruth, PA*

Peter H. Demkovitz, Esquire
Markowitz & Richman
123 South Broad Street
Suite 2020
Philadelphia, Pa 19109
    *Attorney for Defendant Troy Ferus*

**HILLMAN, District Judge**

This matter comes before the Court by way of three separate motions [Doc. Nos. 20, 22, 23] to dismiss Plaintiff's complaint filed by various Defendants in this action. Also before the Court are two motions [Doc. Nos. 28, 30] seeking sanctions against Plaintiff and her attorneys for filing the complaint in this action in violation of Federal Rule of Civil Procedure 11 and 28 U.S.C. § 1927. The Court has considered Defendants' motions and Plaintiff's oppositions thereto, and decides this matter pursuant to Federal Rule of Civil Procedure 78.

For the reasons expressed below, Defendants' motions [Doc. Nos. 20, 22] will be granted in part and denied as moot in part, while Defendant Troy Ferus's motion [Doc. No. 23] to dismiss will be denied as moot. Additionally, Defendants' motions for sanctions will be denied.

## I.  JURISDICTIONAL ISSUES

In this action, Plaintiff asserts claims under both federal and state racketeering laws, specifically the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961 *et seq.*, and the New Jersey RICO Statute, N.J.S.A. 2C:41-1 *et seq.* Plaintiff also brings a claim for deprivation of her civil rights under 42 U.S.C. § 1983. Finally, Plaintiff asserts additional state law claims for breach of fiduciary duty, aiding and abetting a breach of fiduciary duty, negligence, abuse of

process, civil conspiracy, unjust enrichment, and respondeat superior. The Court has jurisdiction over Plaintiff's federal claims under 28 U.S.C. § 1331, and may exercise supplemental jurisdiction over any state law claims pursuant to 28 U.S.C. § 1367.

Plaintiff also asserts that the Court may exercise jurisdiction over her state law claims pursuant to 28 U.S.C. § 1332 regarding diversity of citizenship jurisdiction. However, as set forth below, Plaintiff has failed to properly plead the citizenship of Defendant Litwack & Kernan LLC (hereinafter, "L&K"), and thus the Court cannot exercise jurisdiction over her state law claims based on diversity at this time. Plaintiff avers that L&K is "a law firm the with an address of 183 East Commerce Street, Bridgeton, New Jersey" and that L&K is "a limited liability company formed in and under the laws of the State of New Jersey." (Compl. ¶ 10.) These averments are insufficient to establish L&K's citizenship for purposes of diversity because for a limited liability company, the law requires Plaintiff to identify and aver the citizenship of each of the members of the LLC. See Zambelli Fireworks Mfg. Co. v. Wood, 592 F.3d 412, 418 (3d Cir. 2010) ("[T]he citizenship of an LLC is determined by the citizenship of each of its members.")

Plaintiff, as the party "asserting jurisdiction[,] bears the burden of showing that the case is properly before the court at

all stages of the litigation." Schneller ex rel. Schneller v. Crozer Chester Med. Ctr., 387 F. App'x 289, 292 (3d Cir. 2010) (citing Packard v. Provident Nat'l Bank, 994 F.2d 1039, 1045 (3d Cir. 1993)). To establish diversity jurisdiction under 28 U.S.C. § 1332(a), "the party asserting jurisdiction must show that there is complete diversity of citizenship among the parties and an amount in controversy exceeding $75,000." Schneller, 387 F. App'x at 292. In this regard, a plaintiff relying on diversity of citizenship as the asserted basis for federal jurisdiction "'must specifically allege each party's citizenship, and these allegations must show that the plaintiff and defendant[s] are citizens of different states.'" Gay v. Unipack, Inc., No. 10-6221, 2011 WL 5025116, at *4 (D.N.J. Oct. 20, 2011) (citation omitted). Thus, the Court may properly dismiss a complaint for lack of subject matter jurisdiction in the absence of complete diversity —— i.e., where the plaintiff and any defendant are citizens of the same state. Schneller, 387 F. App'x at 292 (affirming district court's determination that it lacked diversity jurisdiction where plaintiff and eleven defendants were citizens of the same state).

Moreover, as both the Supreme Court and the Third Circuit have recognized, "'[i]t is ... well established that when jurisdiction depends upon diverse citizenship the absence of sufficient averments or of facts in the record showing such

required diversity of citizenship is fatal and cannot be overlooked by the court, even if the parties fail to call attention to the defect, or consent that it may be waived.'" Carlsberg Res. Corp. v. Cambria Sav. & Loan Ass'n, 554 F.2d 1254, 1256 (3d Cir. 1977) (citing Thomas v. Bd. of Trs. of Ohio State Univ., 195 U.S. 207, 211 (1904)) (emphasis added).  Thus, the Court can only "properly determine whether complete diversity of the parties in fact exists and thus whether the Court has jurisdiction to adjudicate the matter[,]" when the plaintiff, even if proceeding pro se, affirmatively pleads facts regarding the citizenship of individual defendants and the dual citizenship of corporate defendants.  Poling v. K. Hovnanian Enters., 99 F. Supp. 2d 502, 515 (D.N.J. 2000).  Therefore, a court may also properly dismiss a complaint where the plaintiff fails to allege sufficient facts for the court to evaluate whether diversity of citizenship exists.  See Poling, 99 F. Supp. 2d at 515-16 (dismissing, in its entirety, action by pro se plaintiffs for lack of subject matter jurisdiction where plaintiffs failed to allege sufficient facts for the court to evaluate the existence of diversity jurisdiction).  As a result of the deficiency outlined above, Plaintiff's complaint is essentially silent as to the citizenship of L&K, and therefore, the complaint is insufficient to support the exercise of jurisdiction under Section 1332.  See Burnett v. Lonchar, No. 11-716, 2011 WL

5519720, *3 (D.N.J. Nov. 10, 2011).

II. **BACKGROUND**

At the outset, the Court notes that Plaintiff's complaint is eighty-eight (88) pages in length, contains three hundred eighty-two numbered (382) paragraphs, alleges sixteen (16) counts against Defendants, and attaches an additional approximately five hundred sixty-six (566) pages of exhibits. It is readily apparent from Plaintiff's complaint, the briefing in this matter, and the hundreds of pages of exhibits provided to the Court, that the parties in this action are not strangers to each other or to litigation, and that this action is not the first time a court has been called upon to resolve issues between them.[1]

Plaintiff's complaint sets forth in great detail what appears to constitute virtually ever single interaction these parties have had with each other in New Jersey state court over the past several years. However, because the Court writes primarily for the parties who are intimately familiar with the

---

[1] In fact, the judge who presided over the state court proceedings between these parties noted as follows: "this litigation has been overwhelmed with irrelevant personal attacks, large egos, and counsel who endlessly file motions to decide issues that could easily be resolved in a settlement conference. The Court has tried its best to rule on these issues one by one. But the hostility in this never ending litigation directly harms only two people, Lauri and Barry Opromollo." (See March 7, 2011 Order by Hon. Julio Mendez, Ex. B to Br. of Litwack and L&K [20-2] 21.)

facts of this case and the prior state court proceedings, the Court declines the opportunity to wade into the morass to the same extent the parties have in their papers. For purposes of resolving the pending motions, it is sufficient to note only the basic facts of this case and some procedural history from the state court proceedings.

Plaintiff Lauri Howe[2] brings this action primarily against Defendant Robert C. Litwack ("Litwack"), who served as a court-appointed receiver for Plaintiff's family's business in an underlying state court proceedings related to Plaintiff's divorce from her former husband, Barry Opromollo. (Compl. [Doc. No. 1] ¶¶ 13, 24-26.) Plaintiff also brings claims against Defendant Litwack's employer, the law firm of Litwack and Kernan LLC, asserting that L&K is liable for damages caused by Litwack's conduct on the basis of respondeat superior. (Id. ¶¶ 10, 32, 376-382.) Plaintiff further asserts claims against Defendant Gruccio, Pepper, DeSanto, & Ruth, PA (hereinafter, "Gruccio Pepper"), the law firm that represented Defendant Litwack during the course of the receivership and provided Litwack with legal counsel throughout that time. (Id. ¶¶ 11, 343.) Finally, Plaintiff asserts claims against Defendant Troy Ferus, a former corrections officer, who Defendant Litwack hired as a marketing

---

[2]Plaintiff was formerly known as "Lauri Opromollo," her married name.

consultant to develop a marketing plan and strategy for the business. (Id. ¶¶ 12, 206(f).)

As set forth in the complaint, Plaintiff's family's business, Howe's Standard Publishing Co., Inc. (hereinafter, "Standard"), is a printing company located in Vineland, New Jersey. (Id. ¶ 14.) Plaintiff's great-great grandfather founded Standard in 1892, and Plaintiff has worked at Standard since she was young, helping to grow the family business. (Id. ¶¶ 14-15.) Overtime, Plaintiff gained experience in both the manufacturing work as well as the management and marketing of the business, and ultimately took over all aspects of the "operational and management responsibilities" at Standard from her mother and by the early nineties she became the President and CEO at Standard.[3] (Id. ¶¶ 15, 16.) Plaintiff held that position until approximately August of 2009. (Id. ¶ 16.)

In approximately 2003, ownership of Standard was held by Plaintiff and several of her family members. (Id. ¶ 18.) Later that year, Plaintiff and her then husband, Opromollo, bought out the interest held in Standard by Plaintiff's mother, brother, and

_____

[3] In the 1990's, Plaintiff's family purchased another printing company known as Glendale Press LLC. (Id. ¶ 17.) Plaintiff represents that ultimately Standard "became the operating entity and Glendale Press LLC became the holding company that owned the real estate and other assets of the business, such as the printing presses and other equipment." (Id.) Plaintiff's complaint refers to Standard and Glendale Press LLC collectively as the "Companies." (Id.) The Court refers to them collectively as "Standard" or the "Companies."

sister.  (Id.)  As a result of the buy out, Plaintiff and
Opromollo became sole owners of Standard with Plaintiff
maintaining a fifty-eight percent (58%) ownership interest and
Opromollo owning the remaining forty-two percent (42%).  (Id.)
From 2003 through 2008, when Plaintiff filed for divorce, both
Plaintiff and Opromollo worked at Standard.  (Id. ¶ 22.)
Plaintiff alleges that as President and CEO, she was responsible
for "all operations, marketing, management and sales" and served
as the face of the company because she was "well known by all
customers and suppliers and ... others in the printing
industry[.]"  (Id.)  Plaintiff asserts that Opromollo was a
"pressman working in the plant" whose "responsibilities related
solely to the production of printing work ordered by customers."
(Id.)

     The events precipitating the underlying state court
proceedings and ultimately this litigation began in August of
2008.  At that time, Plaintiff asserts that she obtained a
domestic violence restraining order against Opromollo, and that
Opromollo was removed from his position at Standard because the
order prohibited Opromollo from coming near Plaintiff.  (Id. ¶
23.)  Opromollo did continue to receive his annual salary of
$75,000 though, while Plaintiff remained as President and CEO of
Standard.  (Id.)  Approximately two months later, Plaintiff filed
for divorce in a family court action captioned Opromollo v.

Opromollo, Docket No. FM-06-205-09, in the Superior Court of New Jersey, Chancery Division, Family Part for Cumberland County (hereinafter, "state court" or "family court"). (Id. ¶ 24.) Plaintiff characterizes the family court action as "highly contentious" with respect to issues of child custody and equitable distribution of marital assets. (Id. ¶ 25.)

As a result of the contentious nature of the divorce proceeding, Plaintiff represents that the family court "sua sponte, entered an administrative order appointing Defendant Robert C. Litwack, Esquire ... as receiver for" Standard "[f]earing that either of the litigants could dissipate their marital assets during the pendency of [the] litigation" given that Standard was "their biggest marital asset by far[.]" (Id. ¶ 26.) Plaintiff asserts that "[n]o one applied for [the] receivership" and that the "family court appointed Litwack as receiver [on its own], without notice to the parties and without notice to the Companies, which were represented by separate counsel at that time." (Id. ¶ 30.)

Plaintiff now brings this "action for damages as a result of a lengthy pattern of racketeering activity, including, bribery of witness, fraud regarding identity, bank fraud, tampering with witness, retaliating against witness, mail fraud, and wire fraud, all committed by Defendant Robert C. Litwack to maintain and exploit control of Plaintiff's business, causing millions of

dollars in loss to Plaintiff."  (<u>Id.</u> ¶ 1.)  According to

Plaintiff, "Defendant Litwack mismanaged Plaintiff's business and

looted it using a pattern of racketeering activity[,]" and

"[w]ith the help and participation of Defendants, Litwack &

Kernan, LLC, Gruccio, Pepper, Desanto, & Ruth, PA, and Troy

Ferus, Defendant Litwack was successful in maintaining control

of the business and depleting its assets for improper purposes."

(<u>Id.</u> ¶ 2.)


## III. <u>DISCUSSION</u>

### A. Standard for 12(b)(1) Motion to Dismiss

Defendants Litwack, L & K, and Gruccio Pepper move to

dismiss Plaintiff's complaint for lack of subject matter

jurisdiction under the <u>Rooker-Feldman</u> doctrine pursuant to

Federal Rule of Civil Procedure 12(b)(1).  <u>See</u> <u>Gary v. Braddock</u>

<u>Cemetery</u>, 517 F.3d 195, 203 (3d Cir. 2008) (observing that where

a court lacks subject matter jurisdiction under the principles of

the <u>Rooker-Feldman</u> doctrine a motion to dismiss pursuant to Rule

12(b)(1) should be granted).

A motion to dismiss pursuant to Rule 12(b)(1) challenges the

existence of a federal court's subject matter jurisdiction.

"When subject matter jurisdiction is challenged under Rule

12(b)(1), the plaintiff must bear the burden of persuasion."

<u>Symczyk v. Genesis HealthCare Corp.</u>, 656 F.3d 189, 191 n.4 (3d

Cir. 2011) (citing <u>Kehr Packages, Inc. v. Fidelcor, Inc.</u>, 926 F.2d 1406, 1409 (3d Cir. 1991)).  In considering a Rule 12(b)(1) motion, "the district court may not presume the truthfulness of plaintiff's allegations, but rather must 'evaluat[e] for itself the merits of [the] jurisdictional claims.'"  <u>Hedges v. United States</u>, 404 F.3d 744, 750 (3d Cir. 2005) (citing <u>Mortensen v. First Fed. Sav. & Loan Ass'n</u>, 549 F.2d 884, 891 (3d Cir. 1977)).

### B.  Standard for Rule 12(b)(6) Motion to Dismiss

Defendants Litwack, L & K, Gruccio Pepper, and Ferus also seek dismissal of Plaintiff's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  When considering a motion to dismiss a complaint for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6), a court must accept all well-pleaded allegations in the complaint as true and view them in the light most favorable to the plaintiff.  <u>Evancho v. Fisher</u>, 423 F.3d 347, 350 (3d Cir. 2005).  It is well settled that a pleading is sufficient if it contains "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).

A district court, in weighing a motion to dismiss, asks "'not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims[.]'"  <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 563 n.8 (2007) (quoting <u>Scheuer v. Rhoades</u>, 416 U.S. 232, 236 (1974)); <u>see also Ashcroft</u>

v. Iqbal, 129 S. Ct. 1937, 1953 (2009) ("Our decision in Twombly expounded the pleading standard for 'all civil actions[.]'") (citation omitted).  First, under the Twombly/Iqbal standard, a district court "must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions."  Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009) (citing Iqbal, 129 S. Ct. at 1949).

Second, a district court "must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'"  Fowler, 578 F.3d at 211 (citing Iqbal, 129 S. Ct. at 1950).  "[A] complaint must do more than allege the plaintiff's entitlement to relief."  Fowler, 578 F.3d at 211; see also Phillips v. Cnty. of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008) ("The Supreme Court's Twombly formulation of the pleading standard can be summed up thus: 'stating ... a claim requires a complaint with enough factual matter (taken as true) to suggest' the required element.  This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element.") (citing Twombly, 550 U.S. at 556).  "The defendant bears the burden of showing that no claim has been

presented." <u>Hedges</u>, 404 F.3d at 750.[4]

IV.  **<u>ANALYSIS</u>**

    A.  **Requirements Under Rule 8(a)**

As a threshold matter, the Court finds that Plaintiff's complaint is in violation of Federal Rule of Civil Procedure 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2).  In this instance, a fair reading of the complaint demonstrates to this Court that Plaintiff does not set forth a short and plain statement of her claims.  As noted supra, the complaint is approximately eighty-eight (88) pages in length, contains approximately three hundred eighty-two (382) numbered paragraphs, and attaches approximately five hundred sixty-six (566) pages of exhibits.

_____

[4] In the context of a motion to dismiss under Rule 12(b)(6), the Court may properly consider any documents relied upon by Plaintiff in the complaint, exhibits attached directly thereto, as well as matters of public record, such as court orders, without converting the motion to one for summary judgment. <u>D.G. v. Somerset Hills School Dist.</u>, 559 F. Supp. 2d 484, 491 (D.N.J. 2008) ("[T]he Court may consider (1) exhibits attached to the complaint, (2) matters of public record, and (3) all documents that are integral to or explicitly relied upon in the complaint without converting the motion to dismiss into one for summary judgment.); <u>see also</u> <u>M & M Stone Co. v. Pennsylvania</u>, 288 F. App'x 156, 162 (3d Cir. 2010) ("In reviewing a Rule 12(b)(6) motion, it is well-established that a court should 'consider only the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim.'")

Throughout the complaint, Plaintiff sets forth what constitutes essentially a laundry list of alleged improprieties and issues she see with regard to Defendant Litwack's conduct as the court-appointed receiver in the underlying state court proceedings. While Plaintiff repeatedly asserts, *inter alia*, that various Defendants failed to act in good faith, made false allegations against Plaintiff, engaged in continued misconduct, conspired to maintain control of Standard and deplete the Companies' assets, and made false representations to the family court, Plaintiff offers little, if any, factual support for these generalized conclusory statements. Accordingly, Plaintiff's complaint fails to comply with the requirements of Rule 8(a).[5] Cf. Venezia v. Union Cnty. Prosecutor's Office, No. 10-6692, 2011 WL 2148818, at *1 (D.N.J. May 31, 2011) (dismissing an amended complaint without prejudice for failure to comply with Rules 8(a), 8(d), and 10(b) because the allegations of the complaint were not short, plain, concise, and direct and the amended complaint "present[ed] a dense rambling thicket of statements over the course of fifty-five pages, as well as 200 pages of exhibits[.]")

**B.    Rooker-Feldman Doctrine**

Defendants Litwack, L & K, and Gruccio Pepper contend that

_____

[5] Despite Plaintiff's failure to comply with Rule 8, the Court does not dismiss her claims on that basis.

Plaintiff's causes of action against them must be dismissed
because the Court lacks subject matter jurisdiction over
Plaintiff's claims under the Rooker-Feldman doctrine.  (Br. Of
Litwack and L&K [Doc. No. 20-1] 25-27); (Br. of Gruccio Pepper
[Doc. No. 22-1] 18-21.)  "The Rooker-Feldman doctrine bars lower
federal courts from exercising jurisdiction over a case that is
the functional equivalent of an appeal from a state court
judgment."  Marran v. Marran, 376 F.3d 143, 149 (3d Cir. 2004).

The Supreme Court held that the Rooker-Feldman doctrine "is
confined to cases of the kind from which the doctrine acquired
its name: cases brought by state-court losers complaining of
injuries caused by state-court judgments rendered before the
district court proceedings commenced and inviting district court
review and rejection of those judgments."[6]  Exxon Mobil Corp. v.
Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005).

As recognized by the Third Circuit, a "case is the
functional equivalent of an appeal from a state court judgment in
two instances: (1) when the claim was actually litigated before

---

[6] In Exxon Mobil, the Supreme Court explained that the
plaintiffs in both the Rooker and Feldman cases alleged federal-
question jurisdiction and called upon the district court to
overturn an injurious state-court judgment.  544 U.S. 280, 291-92
(2005) (citing Rooker v. Fid. Trust Co., 263 U.S. 413, 416
(1923); District of Columbia Ct. of Appeals v. Feldman, 460 U.S.
462, 476 (1983)).  However, the Supreme Court went on to note
that because Section 1257 vests authority to review a state
court's judgment solely in the Supreme Court, the district courts
in Rooker and Feldman lacked subject-matter jurisdiction.  Exxon
Mobil, 544 U.S. at 292.

the state court; or (2) when the claim is inextricably
intertwined with the state adjudication." Marran, 376 F.3d at
149. "A claim is inextricably intertwined with the state court
adjudication when 'federal relief can only be predicated upon a
conviction that the state court was wrong.'" Id. at 150 (citing
Parkview Assoc. v. City of Lebanon, 225 F.3d 321, 325 (3d Cir.
2000)); see also FOCUS, 75 F.3d at 840 ("A claim is inextricably
intertwined if the federal claim succeeds only to the extent that
the state court wrongly decided the issues before it. In other
words, Rooker-Feldman precludes a federal action if the relief
requested in the federal action would effectively reverse the
state decision or void its ruling. Accordingly, to determine
whether Rooker-Feldman bars [plaintiff's] federal suit requires
determining exactly what the state court held[.]") (citing
Charchenko v. City of Stillwater, 47 F.3d 981, 983 (8th Cir.
1995)).

The Third Circuit has concluded that "there are four
requirements that must be met for the Rooker-Feldman doctrine to
apply: (1) the federal plaintiff lost in state court; (2) the
plaintiff "complain[s] of injuries caused by [the] state-court
judgments"; (3) those judgments were rendered before the federal
suit was filed; and (4) the plaintiff is inviting the district
court to review and reject the state judgments." Great Western
Mining & Mineral Co. v. Fox Rothschild LLP, 615 F.3d 159, 166 (3d

Cir. 2010). "The second and fourth requirements are the key to determining whether a federal suit presents an independent, non-barred claim." <u>Id.</u>

Plaintiff, for her part, counters that Defendants' <u>Rooker-Feldman</u> argument "is dead on arrival for the simple reason that Plaintiff did not lose in state court and is not complaining about injuries caused by a state court judgment." (Pl.'s Br. in Opp'n [Doc. No. 33] 24.) Rather, Plaintiff asserts that "she prevailed in the Family Court Action, and the judgment entered granted her petition for divorce." (<u>Id.</u>) She further points out that "[n]one of [the] Defendants was a part to the Family Court Action" and that the "family court did not enter a judgment against Plaintiff that she is inviting this Court to review and reject." (<u>Id.</u>)

Initially, the Court notes that Plaintiff's prayer for relief specifically seeks an "Order requiring Robert C. Litwack, Litwack & Kernan, LLC, Gruccio, Pepper, DeSanto, Ruth, & PA, and Troy Ferus to return to Plaintiff the full amount of payments they received for services provided to the receiver and/or the Companies[.]" (Comp. 86.) The record before the Court includes several state court orders from the family court which specifically approved of and authorized the payment for services

rendered by these Defendants, other than Ferus.[7]  Accordingly, to

the extent Plaintiff seeks an Order from this Court requiring

such payments to be returned, it is obvious that such a request

is inviting this Court to review and reject the state court's

prior decisions on the issue of payment for services rendered.

In this case, Plaintiff attempts to couch her claims as

alleged federal RICO violations and a purported violation of her

---

[7] For example, the Honorable Julio Mendez, Presiding Judge
of the Family Part, issued an Order on June 3, 2011 directing
payment to the receiver in the amount of $40,184.75 from the
funds of Standard for services rendered as well as ordering that
Gruccio Pepper be paid the sum of $7,041.25 from Standard for
services rendered from November 5, 2009 through January 19, 2011.
(See June 3, 2011 Order by Hon. Julio L Mendez, Ex. 1A to Br. of
Gruccio Pepper [Doc. No. 22-3] 13-14.)  Additionally, Judge
Mendez noted that the family court was "satisfied with the work
and performance conducted by the Receiver in this matter ...
[who] significantly contributed to the viability of the parties'
business" and was further "satisfied that the worked performed by
[Gruccio Pepper] on behalf of the Companies' and Receiver [was]
appropriate and reasonable under the circumstances."  (Id.)
        Similarly, Judge Mendez's January 22, 2010 Order allowed for
the release of $5,210 to pay counsel fees to Gruccio Pepper while
noting that Litwack's "hiring of the Gruccio Firm was reasonable
and appropriate under the circumstances."  (See January 22, 2010
Order by Hon. Julio L Mendez, Ex. 2Z to Br. of Gruccio Pepper
[Doc. No. 22-10] 10.)  The same Order also authorized the release
of $16,115.97 for payment of Litwack's fees as the receiver.
(Id.)  Judge Mendez further found that Litwack should immediately
be paid $59,010.97.  (Id.)  In doing so, Judge Mendez expressly
concluded that Litwack "handled the management of the companies
such that they [were] ... substantially rehabilitated and
maintained in such a way that they [were] profitable even in this
difficult economic environment" and that Litwack's "actions have
been reasonable and appropriate to maintain and respond to the
needs of the Companies."  (Id.)
        Judge Mendez issued additional orders of a similar nature
which the Court does not reproduce in detail here.

19

constitutional rights.[8]  However, a careful review of each of Plaintiff's federal RICO claims and her Section 1983 claim demonstrates that they are all premised upon challenging the actions Defendant Litwack engaged in in his capacity as a court-appointed receiver — bearing in mind that his authority to take these actions was a direct result of the family court's order appointing him as a receiver in the first instance.

For example, Count I of the complaint alleges that Defendants Litwack, L&K, and Gruccio Pepper "used a pattern of racketeering activity to maintain control of" Standard.  (Compl. ¶¶ 260-61.)  Plaintiff further alleges that "Litwack exercised managerial control over the Companies, and that [L&K] and Gruccio Pepper participated in this operation or management of the Companies."  (Id. ¶ 261.)  Count II similarly asserts that Litwack and L&K "conducted the affairs of the Companies ... through a pattern of racketeering activity."  (Id. ¶¶ 267-68.) Finally, Count III alleges that Defendants Litwack, L&K, and

_____

[8] Although Plaintiff also asserts state law claims for breach of fiduciary duty, negligence, abuse of process, civil conspiracy, unjust enrichment, and respondeat superior, the Court first examines whether Rooker-Feldman bars Plaintiff's federal claims.  If Rooker-Feldman precludes her federal claims under RICO and Section 1983, then these federal claims will be dismissed with prejudice, and the Court, in the absence of federal question jurisdiction pursuant to 28 U.S.C. § 1331, will decline to exercise supplemental jurisdiction over Plaintiff's remaining state law claims under 28 U.S.C. § 1367.  In that instance, the Court need not address whether Rooker-Feldman similarly bars Plaintiff's state law claims.

Gruccio Pepper are liable to Plaintiff under RICO because they "unlawfully, knowingly and intentionally combine, conspire, and/or agree together with each other, to violate" RICO. (Id. ¶ 273.) Plaintiff further asserts that these Defendants "engaged in the conspiracy to have Litwack maintain control of the Companies through a pattern of racketeering activity and deplete the asserts of the Companies for their benefits" and "to conduct the affairs of the Companies through a pattern of racketeering activity for the purpose of using the Companies' assets for their benefits." (Id. ¶¶ 275-76.)

Each of these claims – at its core – challenges the family court's original orders appointing Defendant Litwack as the custodial receiver pendente lite with respect to Plaintiff's divorce action. The family court was clearly concerned with the potential dissipation of martial assets and found it necessary to appoint a receiver to preserve the assets of Standard for the purposes of equitable distribution in the divorce proceeding. Although Plaintiff argues that she was not the loser in state court and is not complaining about injuries caused by a state court judgment, this Court disagrees. Although Plaintiff "prevailed" with respect to the petition for her divorce, she "lost" virtually every single challenge she made to Litwack's actions as a receiver including seeking his removal from that

position.[9]

Where a federal plaintiff brings a claim that asserts injury caused by a state court judgment which would require review of that decision, Rooker-Feldman bars the claim. The critical task for the Court here is to identify whether Plaintiff's suit is one of "those federal suits that profess to complain of injury by a third party, but actually complain of injury 'produced by a state-court judgment and not simply ratified, acquiesced in, or left unpunished by it.'" Great Western, 615 F.3d at 167. In making this determination, it is useful to examine the timing of the injury. Id. Where the "injury complained of in federal court existed prior to the state-court proceedings" it could not have been "caused by" those proceedings. Id. Here, prior to the state court proceedings Plaintiff and Opromollo operated Standard independent of any involvement from Litwack in his capacity as a court-appointed receiver. It was only upon Litwack's appointment by the family court in approximately August of 2009, that Plaintiff allegedly began to suffer injury with respect to his management of Standard and the conduct he engaged in as a receiver. Prior to Litwack's appointment as receiver, Plaintiff's complained of injury did not exist and thus is the

_____
[9](See, e.g., October 30, 2009 Order by Hon. Julio L Mendez, Ex. D to Pl.'s Compl. 5-8)(denying Plaintiff's request to vacate the August 2009 order appointing the receiver, denying Plaintiff's request to remove the receiver, and denying Plaintiff's request to be reinstated at Standard).

state court's ruling appointing the receiver that caused the injury of which Plaintiff now complains.

It is apparent to this Court that Plaintiff's federal RICO claims which expressly challenge Litwack's ability to maintain control and exercise managerial authority over Standard, to conduct the affairs of the business, and to participate in the operation of the Companies are inviting this Court to review and reject the family court's orders appointing Litwack as receiver for those purposes and subsequently ruling on the appropriateness of his conduct in fulfilling his duties. Such a review would necessitate this Court passing judgment on the soundness and validity of the family court's actions, reasoning, and resolution of Plaintiff's prior challenges to Litwack's conduct in the underlying proceeding giving rise to the receivership. For example, only by drawing its own legal and factual conclusions as to the legitimacy of the family court's rulings could this Court grant Plaintiff any relief. Such review is intended for the appellate process, and is barred under Rooker-Feldman. Thus the Court lacks subject matter jurisdiction with respect to Plaintiff's federal RICO claims, and Counts I, II, and III of the complaint will be dismissed with prejudice as to all Defendants.

For similar reasons, Plaintiff's remaining federal claim for violations of her constitutional rights pursuant to 42 U.S.C. § 1983 also fails. Plaintiff's Section 1983 claim against

Litwack alleges that "Litwack, acting under color of [state] law, violated Plaintiff's constitutional rights and privileges by, among other things, firing her during their first meeting on or about August 14, 2009[,]" by confiscating her car and cell phone, by cutting off her salary without notice or an opportunity to be heard, by converting her property, and by dissipating her rights in property and her right to privacy without due process of law. (Compl. ¶¶ 311-312.)  Plaintiff's 1983 claim also asserts that Litwack "inflicted harm to her person injurious to her health and welfare, including severe emotional distress[,]" sent "many fraudulent submissions to the court[,]" and participated in the family court proceedings by filing motions and issuing subpoenas. (Id. ¶¶ 312-14.)

Even assuming that these allegations would be sufficient to state a claim for relief under Section 1983,[10] the Court again finds that Plaintiff is simply complaining of an alleged injury which resulted from the state court's order appointing Litwack as the receiver and his subsequent actions in carrying out his duties.  While classifying her claim as a constitutional violation, Plaintiff is in actuality asking the Court to find that Litwack "had no authority to carry on any of the above conduct."  (Id. ¶ 320.)  To do so would again require the Court review and reject the propriety of the family court's appointment

───────────────

[10]To be clear, the Court makes no such ruling here.

of a receiver in the first place and its subsequent rulings on the scope of his authority to act. Accordingly, Plaintiff's Section 1983 action is similarly barred by the Rooker-Feldman doctrine.

Several other federal courts have reached the same conclusion in analogous cases. See, e.g., Huszar v. Zeleny, 269 F. Supp. 2d 98, 103 (E.D.N.Y. 2003) ("plaintiff's claims for constitutional and civil rights violations, RICO, and fraud arise from the state court proceedings. ... [and] this action was commenced primarily to attack [the defendant's] authority to act as receiver" and noting that alleging the state court order was procured by fraud does not remove the claims from the scope of Rooker-Feldman because "the order remains in full force and effect until it is reversed or modified by an appropriate state court."); see also Sharp v. Bivona, 304 F. Supp. 2d 357, 363 (E.D.N.Y. 2004) (same).

In light of the Court's ruling which dismisses Plaintiff's federal claims with prejudice, Plaintiff no longer maintains a cause of action which independently establishes federal subject matter jurisdiction.[11]   Accordingly, pursuant to 28 U.S.C. §

---

[11] As the Court noted supra, Plaintiff failed to properly plead the citizenship of all Defendants under 28 U.S.C. § 1332 and therefore cannot rely on diversity of citizenship jurisdiction to establish a basis for the Court to consider her state law claims.  Moreover, because the Court has dismissed with prejudice all of Plaintiff's federal claims and will decline to exercise supplemental jurisdiction over her state law claims, the

1367(c)(3), the Court, <u>sua</u> <u>sponte</u>, declines to exercise supplemental jurisdiction over any state law claims raised in Plaintiff's complaint.  Under Section 1367(c)(3), "[a] district court may decline to exercise supplemental jurisdiction over a claim if 'the district court has dismissed all claims over which it has original jurisdiction[.]'"  <u>Oras v. City of Jersey City</u>, 328 F. App'x 772, 775 (3d Cir. 2009) (citing 28 U.S.C. § 1367(c)(3)).

Moreover, as recognized by the Third Circuit, "[w]here the claim over which the district court has original jurisdiction is dismissed before trial, the district court *must* decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so."  <u>Oras</u>, 328 F. App'x at 775 (citing <u>Hedges v. Musco</u>, 204 F.3d 109, 123 (3d Cir. 2000)) (internal quotations omitted) (emphasis in original).  In this case, the Court finds that considerations of judicial economy, convenience, and fairness do not affirmatively justify the exercise of supplemental jurisdiction particularly because Plaintiff's state law claims – to the extent they are viable – arise out of proceedings that occurred in state court and raise

---

Court need not address Defendants' alternative arguments for dismissal including judicial immunity, claim and issue preclusion, the entire controversy doctrine, and the litigation privilege.

challenges to virtually identical conduct that was challenged before Judge Mendez.

Having declined to exercise supplemental jurisdiction, the Court dismisses all remaining[12] state law claims without prejudice.  As a result, Defendant Ferus's motion to dismiss two state law claims asserted against him for civil conspiracy and unjust enrichment will be denied as moot since those claims are no longer pending before this Court.

### C.  __Sanctions__

Defendants Litwack, L&K, and Gruccio Pepper also filed motions [Doc. Nos. 28, 30] for sanctions pursuant to Federal Rule of Civil Procedure 11 and 28 U.S.C. § 1927.  Federal Civil Procedure Rule 11 is intended to discourage the filing of frivolous, unsupported, or unreasonable claims by "impos[ing] on counsel a duty to look before leaping and may be seen as a litigation version of the familiar railroad crossing admonition to 'stop, look, and listen.'"  Lieb v. Topstone Indus. Inc., 788 F.2d 151, 157 (3d Cir. 1986).  Specifically, Rule 11 requires that an attorney certify that any pleading, written motion or other paper presented to the court (1) is not presented for any improper purpose such as to harass or increase the costs of litigation, and (2) the legal contentions contained "are

---

[12] This includes Counts IV, V, VI, VIII, IX, X, XI, XII, XIII, XIV, XV, and XVI.

warranted by existing law or by a non-frivolous argument for the extension, modification, or reversal of existing law." Fed. R. Civ. P. 11(b)(1), (2). Rule 11 sanctions are "aimed at curbing abuses of the judicial system," Cooter & Gell v. Hartmax Corp., 496 U.S. 384, 397 (1990), and "intended to discourage the filing of frivolous, unsupported, or unreasonable claims," Leuallen v. Borough of Paulsboro, 180 F. Supp. 2d 615, 618 (D.N.J. 2002).

Pursuant to 28 U.S.C. § 1927, "[a]ny attorney ... who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927. The Third Circuit has noted that "a finding of willful bad faith on the part of the offending lawyer is a prerequisite for imposing attorney's fees under this provision." Hackman v. Valley Fair, 932 F.2d 239, 242 (3d Cir. 1991) (citing Ford v. Temple Hosp., 790 F.2d 342, 347 (3d Cir. 1986)). The Third Circuit has explained that "bad faith is a necessary predicate for a violation of section 1927 in order to 'avoid chilling an attorney's legitimate ethical obligation to represent his client zealously.'" Id. at 243 (quoting Baker Indus., Inc. v. Cerberus Ltd., 764 F.2d 204, 208 (3d Cir. 1985)). Imposition of attorney's fees and costs under § 1927 is reserved for behavior that is of an "egregious nature" and is "stamped by bad faith."

In re: Orthopedic Bone Screw Prods. Liab. Litig., 193 F.3d 781, 795 (3d Cir. 1999) (citation omitted).

As a threshold issue in resolving Defendants' motions for sanctions, the Court notes that its analysis of Plaintiff's claims was limited to those claims brought under federal law (RICO and Section 1983) which are barred by the Rooker-Feldman doctrine because the Court declined to exercise supplemental jurisdiction over Plaintiff's remaining state law claims. Accordingly, the Court can only consider a potential award of sanctions within the limited context of the claims it considered under the Rooker-Feldman doctrine.

With respect to these limited federal claims, it does not appear that Plaintiff or her attorneys have violated either Rule 11 or 28 U.S.C. § 1927. Here, Plaintiff has presented an affidavit [Doc. No. 35-3] by her counsel Edward T. Kang, Esquire which sufficiently demonstrates to the Court that Plaintiff's complaint was not filed for an improper purpose such as to harass, delay, or to increase Defendants' legal cost. Despite the contentious nature of the prior litigation between these parties, the Court finds that Plaintiffs' counsel engaged in several hundreds of hours of research and document review prior to bringing filing the complaint. It also appears that Plaintiff's counsel consulted with multiple attorneys regarding the meritoriousness of the potential claims prior to filing the

complaint.

To the extent Defendants argue that Plaintiff's counsel should have known these claims were barred under Rooker-Feldman, the Court disagrees.  The Rooker-Feldman doctrine requires the Court to examine the nature of the federal proceedings and the state court proceedings in order to determine its applicability. While in some cases it is absolutely clear that a federal plaintiff's claims are barred by Rooker-Feldman, other cases present a close enough call such that filing a complaint in the latter is not objectively frivolous.  Plaintiff's federal claims in this case, fell into the latter category and sanctions are not warranted here.  For similar reasons, the Court also concludes that Defendant Gruccio Pepper has failed to sufficiently demonstrate that Plaintiff's counsel's bad faith in filing the complaint in this case.  Accordingly, Defendants' motions for sanctions will be denied.

## IV.  <u>CONCLUSION</u>

For the foregoing reasons, Defendants' motions [Doc. Nos. 20, 22] to dismiss will be granted in part and denied as moot in part, while Defendant Ferus's motion [Doc. No. 23] to dismiss will be denied as moot.  Additionally, Defendants' motions for sanctions will be denied.  An Order consistent with this Opinion will be entered.

Dated: <u>June 30, 2013</u>                <u>  s/ Noel L. Hillman  </u>
At Camden, New Jersey              NOEL L. HILLMAN, U.S.D.J.